IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| DANIEL A. MARTELLI,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | Civil No. 17-2950 (RMB)<br><br>**MEMORANDUM OPINION & ORDER** |

**BUMB**, United States District Judge:

This matter comes before the Court upon an appeal by Plaintiff Daniel Martelli from a denial of social security disability benefits on October 5, 2015, which was upheld by the Appeals Council on February 23, 2017. [Record of Proceedings, "R.P.", p. 1-5]

For the reasons set forth below, the Court vacates the decision of the Administrative Law Judge ("ALJ") and remands for proceedings consistent with this Memorandum Opinion and Order's reasoning.

I.  **STANDARD OF REVIEW**

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual

1

decisions if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience,

2

engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). In Plummer, 186 F.3d at 428, the Third Circuit described the Commissioner's inquiry at each step of this analysis:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).
>
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that [his] impairments are "severe," she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.
>
> Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume her former occupation, the evaluation moves to the final step.

> At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

## II. **FACTUAL BACKGROUND**

The Court recites only the facts that are necessary to its determination on appeal, which is narrow.

Plaintiff was born in 1987, and was 19 years old at the alleged onset date. [R.P., p. 97] He applied for Social Security Disability Benefits on January 1, 2013, alleging an onset of disability of January 1, 2007. [R.P., p. 106-07][1]

A disability hearing was held on August 3, 2015. The ALJ heard testimony from three witnesses: Plaintiff, Plaintiff's mother, and the Vocational Expert.

### A. **Plaintiff's impairments**

At the disability hearing, Plaintiff testified that he primarily suffers from Obsessive Compulsive Disorder ("OCD"), and

---

[1] At the disability hearing Plaintiff amended the alleged onset date to January 1, 2013. [R.P., p. 47]

4

associated social anxiety. [R.P. p. 57, 67][2] Plaintiff testified that it takes him "quite a bit longer" to "complete" rather basic "tasks" because his OCD "causes . . . ruminations . . . that interrupt [his] train of thought and [his] concentration." [R.P., p. 57, 68-69] He further testified that his OCD also causes him to perform "rituals" such as head nodding and eye blinking. [R.P., p. 65, 66][3] The rituals and ruminations, Plaintiff testified, are "physically exhausting" to the point where "three to four times per week [he] feel[s] that he need[s] to take a nap . . . that's about two to three hours long." [R.P., p. 71][4]

These symptoms-- the ruminations, rituals, and the exhaustion that results-- Plaintiff and his mother testified, very significantly slow the pace at which Plaintiff can perform a

---

[2] Plaintiff's medical history also includes Lyme disease infection in 2005, and epileptic seizures which occurred sporadically between 2005 and 2007. [R.P., p. 67] However, Plaintiff testified that he has been "seizure free since February 2007. And on a day-to-day basis [he] do[es] not have any physical limitations due to Lyme disease." [Id.] The ALJ found that Plaintiff's "seizure disorder is not severe" [R.P., p. 25], and Plaintiff does not challenge this finding on appeal.

[3] Plaintiff's mother testified that Plaintiff also "has a lot of rituals of checking, always checking," "did I do that right? Or do I understand that right?" [R.P., p. 75] Plaintiff explained, "I will seek a lot of reassurance . . . you know, 'Was it okay that I did this, or was my word choice okay, was I polite to that person.' And those questions typically go all day." [R.P., p. 71-72]

[4] Plaintiff's mother similarly testified that Plaintiff's OCD "just seems to take a lot out of him." [R.P., p. 78]

variety of tasks. For example, it takes Plaintiff two hours to mow the lawn, but it takes his father "less than an hour" to mow the same lawn. [R.P., p. 58] Plaintiff's mother, with whom Plaintiff lives, testified that "it takes him very long to, say eat a meal or get ready for the day[5]. . . . It could take him like 20 minutes to just pick [something] up [in his room] or just pull up the covers or even to go get a shower. It's a good 40 minutes to shave, a good 45 minutes."[6]

Plaintiff testified that his OCD affects his pace more severely when he performs tasks requiring greater "concentration and critical thinking." [R.P., p. 69] In this regard, Plaintiff testified that he could only manage a 50% class load each semester in college because reading is his biggest challenge. [R.P., p. 59-60] According to Plaintiff, "taking two courses with [] obsessive compulsive disorder . . . requires the same amount of effort as five courses once did." [R.P., p. 64] In response to the question, "[w]hen you're working in a group setting, has your pace ever been a problem with group assignments?", Plaintiff answered, "if I am in a meeting with [a] group, yes, it is. I

---

[5] Plaintiff testified it takes him "about 45 minutes" to eat breakfast and "about 40 minutes" to "shower and put on [his] clothes." [R.P., p. 69]

[6] Plaintiff's mother also testified that she can fold towels four or five times faster than Plaintiff. [R.P., p. 77] However, Plaintiff testified that he folds towels in "about the same time that it takes [his mother] to do it." [R.P., p. 59]

6

certainly-- it is difficult for me to maintain a pace with them."
[R.P., p. 72-73] Lastly, Plaintiff testified that he has
"routinely" taken "five to six hours" to complete tests which his
classmates were expected to finish in 75 minutes [R.P., p. 58],
and that it takes him about 30 minutes to read a single textbook
page, or about 15 hours to read an average textbook chapter.
[R.P., p. 64]

To treat his alleged disabilities, Plaintiff has been in
psychotherapy with Dr. Hicks since 2007, and has received
cognitive behavioral therapy from Dr. Newman since 2009. [R.P. p.
66] The doctors' records-- which reflect diagnoses of OCD and
social anxiety disorder-- are discussed at length in the ALJ's
decision. [see R.P., p. 32-37] They are consistent with the
testimony concerning Plaintiff's ruminations and rituals, and
reflect an "extraordinarily slow reading rate," with executive
functioning test results in the first percentile for both reading
comprehension and reading rate. [R.P., p. 30, 36]

### B. Vocational Expert's Testimony

The Vocational Expert testified that a hypothetical
individual with Plaintiff's age and education, with limitations of
no "work at a rapid production rate pace" and "only occasional
reading," could perform the work of a "hand packager," a
"furniture assembler," and a "routing clerk." [R.P., p. 80-81]

The Vocational Expert also testified that the hypothetical

7

individual could sustain such jobs even if he could only sustain focus, concentration, and attention for two hours at a time and then required a rest break of five minutes. [R.P., p. 83-84]

III. **ALJ'S DETERMINATION**

The ALJ concluded that "the claimant has not been under a disability as defined in the Social Security Act since January 3, 2013." [R.P., p. 38] Relevant to the issues presented on appeal, the ALJ found that "the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant cannot work at a rapid production rate pace . . . and can only . . . sustain focus, concentration, and attention for 2 hours and then requires a rest break of 5 minutes." [R.P., p. 30]

However, the ALJ also found "that the claimant has a marked level of limitation in concentration, persistence or pace. . . . The claimant's deficits in this category arise from his difficulties with pace as demonstrated throughout his longitudinal medical history. In addition, deficits in attention, stress and changes in routine all combine to result in a marked limitation in this category." [R.P., p. 29]

IV. **ANALYSIS**

Plaintiff argues that the ALJ's residual functional capacity determination is not supported by substantial evidence because the

ALJ's finding that Plaintiff can perform all but "rapid production rate pace jobs," so long as 5-minute rest breaks are given every two hours, is irreconcilably inconsistent with the ALJ's finding that Plaintiff has marked "difficulties with pace as demonstrated throughout his longitudinal medical history. . . . [and] deficits in attention, stress and changes in routine." [R.P., p. 29] Plaintiff explains, the RFC "does not restrict *ordinary* production pace jobs, only those that are particularly 'rapid' in nature." [Dkt #7, p. 15] Plaintiff attributes this asserted error to the ALJ's failure to adequately incorporate Plaintiff's pace deficits into the hypothetical posed to the Vocational Expert at the disability hearing.

In support of this argument, Plaintiff relies upon <u>Ramirez v. Barnhart</u>, 372 F.3d 546 (3d Cir. 2004), which held that the ALJ's decision was not supported by substantial evidence because the hypothetical posed to the Vocational Expert did not take into account deficiencies in claimant's pace. In <u>Ramirez</u>, the vocational expert concluded that the claimant could perform the jobs of assembler, hand packer, and production inspector. 372 F.3d at 549. The Third Circuit explained, however, that the vocational expert "may have changed her answer" if the ALJ's hypothetical had included a limitation consistent with the ALJ's own finding that the claimant often suffered from deficiencies in concentration, persistence or pace. <u>Id.</u> at 554. The Court

9

reasoned, "[m]any employers require a certain output level from their employees over a given amount of time, and an individual with deficiencies in pace might be able to perform simple tasks, but not over an extended period of time."  Id.

The Commissioner responds that this case is distinguishable from Ramirez insofar as unlike the ALJ's hypothetical in Ramirez, which did not include any limitation at all related to pace, the ALJ in this case did include a pace limitation: the ALJ instructed the Vocational Expert to "assume that [the hypothetical] individual is limited such that they cannot work at a rapid production rate pace."  [R.P., p. 80]

Plaintiff replies that "[h]ere the ALJ . . . simply eliminated particularly 'rapid' production pace jobs, leaving intact, and unrestricted, normal production pace, which is equivalent to no limitation in this area."  [Dkt #11, p. 5]

The Court cannot determine on this record whether, consistent with the teaching of Ramirez, the ALJ adequately incorporated her own findings concerning Plaintiff's marked pace deficits in the hypothetical she posed to the Vocational Expert.  The ALJ found "that the claimant has a marked level of limitation in . . . pace" [R.P., p. 29], yet the hypothetical provided to the Vocational Expert only excluded rapid production pace jobs.  The Court cannot discern how this limitation squares with the record evidence that Plaintiff cannot perform daily tasks of living-- such as shaving--

at a typical rate.  Perhaps the ALJ found Plaintiff's evidence in this regard not credible, or exaggerated, however, if this is so, the ALJ did not articulate such a finding anywhere in her decision, nor any reasoning supporting such a finding.  Rather, the ALJ simply stated, in conclusory fashion, "I find . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." [R.P., p. 31][7]

"The Third Circuit has held that access to the Commissioner's reasoning is [] essential to a meaningful court review." Sanford v. Comm'r of Soc. Sec., No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014)(citing Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)); see also Stockett v. Comm'r of Soc. Sec., 216 F. Supp. 3d 440, 456 (D.N.J. 2016)("The Third Circuit 'requires the ALJ to set forth the reasons for his decision.'")(quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 123 (3d Cir. 2000))(Bumb, D.J.).  The Court cannot determine on the present record whether the ALJ's decision was

---

[7] Considering the limit on reading that was incorporated into the hypothetical, perhaps the ALJ believed that Plaintiff's OCD symptoms significantly interfered with higher level thinking tasks such as reading, but did not significantly interfere with simpler tasks such as folding towels.  Had the ALJ articulated this distinction, and supported such a distinction with record evidence or credibility determinations, a different result might obtain in this case.

supported by substantial evidence because it presently lacks the requisite access to the ALJ's reasoning concerning why the hypothetical posed to the Vocational Expert excluded only *rapid* paced production rates.  It may well be the case that, upon remand, the ALJ will arrive at the same decision.  At this juncture, however, the ALJ must provide additional explanation for the decision.  As such, the Court **vacates** the decision of the ALJ and **remands** for proceedings consistent with the above analysis.
**ACCORDINGLY**, it is on this 29th day of October, 2018,

    **ORDERED** that the decision of the Administrative Law Judge is **VACATED** and the case is **REMANDED** for further proceedings consistent with this Memorandum Opinion; and it is further

    **ORDERED** that the Clerk of Court shall close this case.


    ___s/ Renée Marie Bumb___
    RENÉE MARIE BUMB, U.S.D.J.